No. 19,364.

FRED POLICHIO *v.* OLIVER WELL WORKS, INC.

(362 P. [2d] 1056)

Decided July 3, 1961.   Rehearing denied July 24, 1961.

Mr. EMORY L. O'CONNELL, Mr. CECIL R. DITSCH, for plaintiff in error.

Messrs. HOUTCHENS AND HOUTCHENS, Mr. JOHN J. DOOLEY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

WE will refer to the parties as they appeared in the trial court where plaintiff in error was defendant.

In December of 1953, defendant invited Oliver Well Works, Inc., plaintiff, to make explorations looking to drilling an irrigation well and installing a pipeline on his property. After test holes were drilled the defendant's account was charged and he was billed for this work. An estimate was then submitted by plaintiff to defendant for the installation of a well and pipeline necessary to deliver the water from the well to the ditch from which defendant's property would be irrigated. This estimate or quotation was allegedly high so as to facilitate defend-

ant's obtaining a loan. After receiving the estimate defendant instructed plaintiff to proceed with the work.

The well was tested on March 6, 1954, and was found to produce in excess of 800 gallons per minute (gpm). The defendant was present at the testing and he paid $1,000 on account, even before he had been billed for the project. When questioned at the trial concerning this payment on account before billing, the defendant stated that the well was " * * * complete and it was about as good as we could expect," and he thought it was " * * * pretty close to satisfactory." Actually the well produced 200 gpm more than the plaintiff had estimated in submitting the bid to defendant.

Although 12-inch pipe had been specified in the estimate, plaintiff testified that on two different occasions defendant agreed to the installation of 10-inch pipe because not only would the installation and maintenance be cheaper, but the same results could be obtained by use of the smaller size pipe.

After the pipe had been installed, defendant complained that it was leaking. Plaintiff made the necessary repairs the next day and testified that defendant made no further complaints until April of 1955.

On July 22, 1954, plaintiff sent defendant an invoice for $500 for work performed on a well which had been drilled in September of 1953 and for which the defendant had not been previously charged. Defendant testified he couldn't recall having received this invoice and should never have been billed for it anyway since there was an agreement that no charge would be made because the well hadn't produced as expected and for that reason defendant had negotiated with plaintiff for the new well and pipeline. Plaintiff's version as to the agreement was that no charge would be made for the first well if defendant did not put it to use, and the charge was, in fact, made only after it was learned that defendant had actually commenced using the well in the latter part of May 1954.

In July 1954, after final charges for all materials furnished and work performed by plaintiff had been made, including the belated charge for the 1953 well, a bill showing the unpaid balance of defendant's account — the amount sought in the prayer, $2,706.91 — was sent and was continued monthly thereafter for a period of eight months until March of 1955 without complaint or payment by defendant. In October 1954 defendant had asked for a statement from plaintiff so he could obtain a compensatory payment from the Production Marketing Administration (PMA), a United States government agency. Plaintiff furnished this statement which set forth the cost of installing the pipeline, i.e. $1,928.95. Defendant utilized this statement and received one-half the amount from the government agency which had inspected and approved the pipeline.

On September 12, 1955, plaintiff brought this action in the District Court of Douglas County alleging that defendant owed him $2,706.91 for the unpaid balance of an account based on labor and services performed and materials furnished by plaintiff for defendant. Attached to the complaint were invoices and a debit and credit ledger sheet evidencing the various transactions and showing the balance due. A further allegation was that an account stated resulted from the continuous billing of the defendant without objection for a period of several months.

The defendant denied the allegations and counterclaimed for loss of his hay crop, claiming that the loss was due to a delay in the installation of the well and pipeline. In affirmative defenses to the counterclaim, it was alleged that the defendant permitted the work to be completed after the date mentioned in the bid, i.e. March 20, 1954, and accepted the benefit of plaintiff's performance of the contract and was thus estopped to assert the violation.

At the close of all the evidence, the trial court dismissed defendant's counterclaim and submitted the case

to the jury on the issues raised by the complaint and answer. A verdict was returned in the exact amount of the prayer, i.e. $2,706.91, upon which judgment was entered.

The rulings of the trial court which it is claimed were erroneous are:

1. Denial of defendant's motion for dismissal.

2. Submission of Instruction No. 5 dealing with the elements of account stated plus the refusal to submit defendant's instruction on the same subject.

3. Sustaining objections to questions propounded by defendant's counsel.

4. Dismissal of counterclaim.

## I.

The contention that plaintiff's evidence was so lacking in sufficiency as to require dismissal of the complaint is without merit. There is ample evidence to support both theories set forth in the complaint. The claim based upon the furnishing of services and materials is evidenced by the original submission to defendant of a bid which was apparently agreed to by defendant and was performed by plaintiff. Upon completion of the well on March 6, 1954, defendant manifested his approval of the prior statement by the payment of the sum of $1,000. He now contends that the well was not completed on time and that 12-inch pipe was not used. According to plaintiff, these alleged defenses were waived and this issue was properly submitted to the jury.

There was also ample evidence in support of plaintiff's theory of account stated. Not only was the defendant silent in the face of repeated billing over a period of several months, he actually utilized one of plaintiff's statements for his own purposes. His conduct, considered in the light of previous happenings, was thus amply sufficient to support a verdict based upon account stated.

## II.

If it could be now concluded that the verdict was based

wholly upon the prior implied contract, and not upon a subsequent promise or acknowledgment that the account submitted was accurate, it would be unnecessary to disturb the verdict. However, since the record is such that the jury may have reached its verdict on the basis of account stated, it is necessary to consider the court's instruction on that issue, which reads:

"You are instructed that in this action the plaintiff seeks to recover from the defendant upon two theories. Under one of these, plaintiff claims that defendant owes him the sum of $2,706.91 for labor and services performed and materials furnished, and under the other that defendant owes plaintiff that sum upon a claim which is known in law as an account stated.

"You are instructed that before you can return a verdict in favor of the plaintiff for any amount, you must find from a preponderance of the evidence either that the plaintiff and the defendant reached an agreement, either express or implied, as to the work to be done by plaintiff for defendant and the materials and supplies to be furnished in connection therewith, and the price to be charged and paid therefor *or* that the plaintiff and defendant have adjusted the accounts between them, have struck a balance due thereon and have expressly or impliedly assented to the correctness thereof in all particulars. You are also instructed that if you find that plaintiff sent statements on its account to defendant and defendant received such statements and did not object thereto for an unreasonable time, then defendant impliedly assented to the correctness of those statements in all particulars and the plaintiff had a right to infer acquiescence of defendant in the correctness of the charges made and your verdict should be for plaintiff on its complaint for account stated."

We have no criticism of the first part of the instruction down to the italicized "or." To this point, it fairly and accurately describes the plaintiff's claims. It is the second phase of the instruction which challenges attention,

especially that portion which advised the jury that the sending of statements to which the defendant did not object for an unreasonable time, gave rise to an inference of defendant's acquiescence and told the jury that if it found this to be the fact " * * * your verdict should be for plaintiff on its complaint for account stated."

■ The principles governing the doctrine of account stated are set forth in our decisions. See *Teller v. Ferguson,* 24 Colo. 432, 51 Pac. 429; *Mace v. Spaulding,* 110 Colo. 58, 130 P. (2d) 89; *Johnson v. Adams,* 139 Colo. 163, 337 P. (2d) 601; *Bowser v. Union Bag Company,* 112 Colo. 373, 149 P. (2d) 800.

In the *Teller* case it was described in these terms:

"To constitute what is known as 'an account stated,' there must have been an accounting between the parties, a balance struck, and a promise, express or implied, to pay such balance to the plaintiff. * * * "

Later, in *Johnson v. Adams,* supra, the contention that the sending of bills and the failure to object thereto, of itself constitutes account stated was rejected, and the necessity for finding that there was a genuine meeting of the minds between the parties was emphasized, the Court saying:

" * * * Counsel for defendant insist that the sending of these statements constituted an account stated in favor of defendant in the sum of $109.99. We cannot agree. *Mace v. Spaulding,* 110 Colo. 58, 130 P. (2d) 89, sets forth the elements necessary to create an account stated, which we epitomize as follows:

"1. An account which must have been examined and accepted by the parties;

"2. An agreement that the balance and all items of account representing the previous monetary transactions of the parties are correct;

"3. An admission of liability to the apparent debtor for the amount of the balance against him.

"4. The assent of both parties and a meeting of the minds."

The *Restatement of the Law of Contracts*, Sec. 422 (2), declares that retention of a statement without objection by one party for an unreasonably long time is a manifestation of assent. In 6 *Corbin, Contracts* 187, Sec. 1308, the evidentiary value of retention without objection by the debtor of a bill is also discussed. We quote the pertinent portion:

" \* \* \* The bill or account, even though actually received, has no effect whatever, as an admission or otherwise, against the alleged debtor. His continued silence for an unreasonable time may be held to be an admission that the bill is correct or even an expression of a promise to pay it. But a tacit admission like this would be no more conclusive than an express admission; and a tacit promise like this would be enforceable only if it would be so if put into express words.

"Statements by the courts are numerous to the effect that an account stated is merely prima facie evidence of the balance due. Such a statement must not be taken to mean that the creditor cannot properly declare upon the debtor's promises, express or implied, that he makes when he assents to the account as correct. But whether the creditor declares on the original debt or on the new promise, the account stated is prima facie evidence of the amount due. It is no more than that, if the account is merely a numerical computation; it is much more than that if the agreement is a compromise or settlement of an unliquidated claim."

It is thus apparent that an account stated does not conclusively arise from the failure of the debtor to protest the sending of bills, and his silence with respect thereto is not so conclusive as to require a verdict against him. To the extent, therefore, that the quoted instruction required the jury to find for plaintiff if it found that the defendant failed to object to the bills for an unreasonable time, it was erroneous, and we are unable to say that it was not prejudicial.

Upon the whole record it appears that the plaintiff's

claim is valid and that it should, upon the basis of the equities of the case, recover. The issues, however, presented jury questions and the faulty instruction could have been the basis upon which the jury resolved them. On this ground alone, the cause must be remanded.

We find no merit in the other points argued by defendant.

The judgment is reversed and the cause remanded for a new trial consistent with the views expressed herein.

MR. JUSTICE MCWILLIAMS and MR. JUSTICE SUTTON concur.